# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE FACEBOOK ACCOUNTS<br>https://www.facebook.com/MinaLeigh30 AND<br>https://www.facebook.com/louis.sanapaw.7 THAT ARE STORED AT<br>PREMISES CONTROLLED BY META PLATFORMS, INC. | )<br>)<br>)<br>)<br>)<br>)    Case No. 23-m-639 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Section 841(a)(1) | Distribution of a controlled substance and possession with the intent to distribute. |

The application is based on these facts:

See Attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*B.M.D'A*   04/20/23 at 4:25 P.M.

*Applicant's signature*

Brian D'Arcy, FBI SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: 4/20/2023

City and state: Green Bay, Wisconsin

*Judge's signature*

Magistrate Judge James R. Sickel

*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
FACEBOOK ACCOUNTS
https://www.facebook.com/MinaLeigh30
AND
https://www.facebook.com/louis.sanapaw.7
THAT ARE STORED AT PREMISES
CONTROLLED BY META PLATFORMS,
INC.

Case No. 23-m-639

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brian D'Arcy, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with certain Facebook accounts that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been employed as such since July 2017. Upon graduation from the FBI Academy in Quantico, Virginia, I was assigned to the Milwaukee Division, Green Bay Resident Agency. Since arriving in Green Bay, I have been assigned to work on various criminal violations, to include fraud, child

pornography, armed robberies, drug trafficking, and crimes occurring on Native American reservations. I have experience in conducting criminal investigations involving suspects using electronic communications to orchestrate criminal activity. I have assisted in the execution of search warrants for the purpose of obtaining documents relating to various criminal activity. As a Special Agent of the FBI, I am authorized to investigate violations of the criminal laws of the United States, and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) have been committed by the users of the Facebook accounts https://www.facebook.com/MinaLeigh30 and https://www.facebook.com/louis.sanapaw.7. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. On December 30, 2022, at approximately 9:38 PM, officers with the Menominee Tribal Police Department (METPD) responded to a report of an overdose at N6506 Wild Rice Court, Neopit, WI 54150. Upon arrival, officers were directed to a bedroom inside of the residence, where they observed a female, later identified as Aremina Dodge, lying unresponsive on the bed. A male, later identified as Daro R. James, was observed grabbing Dodge's legs and rolling her over on the bed. Officers observed vomit around Dodge's mouth, the right sleeve of her T-shirt,

on her bed, and on the floor. There was also dried vomit on her left arm. Dodge was not breathing and officers did not feel a pulse. Additionally, Dodge was noted as feeling cold to the touch. Officers requested the Menominee County Medical Examiner, who pronounced Dodge dead after arriving on scene.

6.      During a search of Dodge's bedroom, officers located and seized the following items as evidence: a tan granular substance folded inside of a cigarette package paper; five sections of tinfoil, three with burned residue; four straws with beveled ends; and two empty dime-sized plastic baggies. Officers also located a bottle of Suboxone in the bedroom that was prescribed to Dodge. In my training and experience, I am aware that Suboxone is a medication used to treat opioid addiction.

7.      While on scene, METPD Officer Tanner Uttecht spoke to Daro James. James stated that he last spoke to Dodge about one hour prior to finding her unconscious and not breathing. Dodge said that she was going to take a nap. James said that he went into Dodge's bedroom and found her unconscious and not breathing. James said that Dodge did not use drugs.

8.      On January 30, 2023, a toxicology report by NMS Labs was issued to the Menominee County Medical Examiner's Office for specimens belonging to Aremina Dodge. The report listed the following positive findings:

**Positive Findings:**

| Analyte | Result | Units | Matrix Source |
|---|---|---|---|
| Caffeine | Presump Pos | mcg/mL | 001 - Iliac Blood |
| Cotinine | Presump Pos | ng/mL | 001 - Iliac Blood |
| Amphetamine | 20 | ng/mL | 001 - Iliac Blood |
| Methamphetamine | 46 | ng/mL | 001 - Iliac Blood |
| Fentanyl | 30 | ng/mL | 001 - Iliac Blood |
| Norfentanyl | 5.2 | ng/mL | 001 - Iliac Blood |
| 4-ANPP | 3.6 | ng/mL | 001 - Iliac Blood |

See Detailed Findings section for additional information

3

9.     Based on my training and experience, these findings suggest that levels of methamphetamine and fentanyl were present in Dodge's body at the time of her death.

10.    On December 31, 2022, METPD Officer Tanner Uttecht collected a Black TCL smartphone with a cracked screen from Colleen R. Dodge, Aremina's mother, at N3326 State Highway 47, Neopit, WI 54150. Aremina's father, Gary S. Dodge Sr., stated that the phone belonged to Aremina Dodge.

11.    Colleen and Gary Dodge told investigators that Holly Waymen and Daniel Freeman found the phone in the room of the residence where Aremina Dodge died. After finding the phone, they brought it to Colleen and Gary Dodge, along with Aremina's other personal items. Gary Dodge also told investigators that on the night of Aremina's death, she texted him just after 8:00 PM, saying that Daro James needed $150. James picked up the money from Gary Dodge and just over an hour later Gary and Colleen Dodge learned that Aremina had died from an apparent drug overdose.

12.    After collecting the Black TCL smartphone from Dodge's parents, the phone was collected from METPD evidence and placed into FBI evidence. FBI forensic examiners imaged the phone and investigators reviewed the imaged contents of the phone. During the review of the phone, investigators observed text messages sent between Aremina Dodge and Gary Dodge on the evening of December 30, 2022 using the TextNow application. TextNow is an application that allows the user to send and receive free calls and text messages while using a WiFi network. More specifically, investigators observed that Aremina sent her father a text message at approximately 8:16 PM stating, "Dad daro is coming over for $150." Gary said that he would be back in about 45 minutes and then advised Aremina that he was home and to have Daro James meet him outside. At approximately 9:06 PM, Aremina replied, "Ok he will." At approximately 9:16 PM, Aremina then replied, "He is on his way."

4

13.     On February 16, 2023, investigators interviewed Daro James at the Menominee Tribal Police Department. After being advised of his rights and agreeing to speak with investigators, James told investigators that on the night of December 30, 2022, he and Dodge had just gone shopping at Walmart. After this, they were dropped off at the Boivin residence in Neopit. While at the residence, James and Dodge used heroin together. Dodge asked James where he had put the heroin, which he had in his pocket. He gave it to Dodge and she made up another shot of heroin. She then said that she was going to lay down. James did a scratch off and listened to music while Dodge was laying down. James eventually went to pick up money from Aremina's father, Gary Dodge. James responded to text messages from Gary Dodge on Aremina's phone and advised Gary that he was on his way over. After returning to the residence, James was going to go across town and decided to wake up Aremina. When he tried to wake her up, she would not wake up.

14.     James told investigators that he purchased the drugs from Louis Sanapaw. When he and Dodge got back from Walmart, James met with Sanapaw on a back road. James gave Sanapaw $100 and Sanapaw gave James about a half-gram of a controlled substance. James believed that Sanapaw said the controlled substance was "down" and Sanapaw did not say anything about fentanyl being in it. In my training and experience, I am aware that the term "down" typically refers to heroin. James said that he got ahold of Sanapaw using Dodge's phone. He believed he spoke with Sanapaw over Facebook. James said that he had purchased heroin from Sanapaw approximately two or three times in the past.

15.     Following the interview with Daro James, investigators searched for the Facebook profiles associated with Aremina Dodge and Louis Sanapaw. Based on the profile images contained in the account https://www.facebook.com/MinaLeigh30, investigators believe that this account belonged to Aremina Dodge. Additionally, the name listed on the Facebook page is "AreMina Leigh Tourtillott." During the interview with Daro James, he stated that Dodge's

5

Facebook name was Aremina Leigh Tourtillott. Based on the profile images contained in the account https://www.facebook.com/louis.sanapaw.7, investigators believe that this account belongs to Louis Sanapaw. Additionally, the name listed on the Facebook page is "Louis Sanapaw."

16.     Based on my experience working on the Menominee Indian Reservation, I am aware that Facebook and Facebook Messenger are a common way for individuals that are part of the Menominee Nation community to communicate with one another. I am also aware that this platform can be used by members of the community to discuss illegal narcotics transactions. Additionally, Daro James stated to investigators during his interview that he believed he contacted Louis Sanapaw to obtain a controlled substance using Facebook. During a review of the imaged cell phone that belonged to Aremina Dodge, investigators were unable to locate text messages between Aremina Dodge and Louis Sanapaw. Additionally, the image of the phone did not appear to contain messages sent via Facebook.

17.     On April 13, 2023, investigators received the Fond Du Lac County Medical Examiner's Office autopsy report for Aremina Dodge. According to the report, Dodge's cause of death was listed as fentanyl and methamphetamine toxicity.

18.     Given this information and the events described in this affidavit, I believe that obtaining an order such as that described in this search warrant application to receive the information described in Attachments A and B would assist law enforcement in determining if Louis Sanapaw communicated with Aremina Dodge or Daro James over Facebook on the night of her death. This information would help to either disprove or corroborate the statement provided by Daro James and potentially assist with determining the exact source of the controlled substance that is believed to have caused Dodge's death. The potential existence of location data associated with the Facebook accounts may also assist investigators in corroborating or disproving

6

information learned during the course of the investigation. I am requesting both Louis Sanapaw's account and Aremina Dodge's account in the event that the messages were erased at some point by Louis Sanapaw. A preservation request was sent to Facebook for both accounts on February 28, 2023 under case number 7631701. I am requesting records both two weeks prior to and after Dodge's death in the event that other illegal narcotics transactions were facilitated via Facebook Messenger between Dodge, James, and Sanapaw, and in the event that Dodge's death was discussed by Sanapaw over Facebook following her alleged overdose.

19.     I am aware that Aremina Dodge was a Native American Indian. Federal jurisdiction for an investigation into her death attaches through that status and because the locations described above are within the exterior boundaries of the Menominee Indian Reservation in the Eastern District of Wisconsin.

## BACKGROUND CONCERNING FACEBOOK[1]

20.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

21.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the

---

[1] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

7

user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

22. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

23. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

24. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their

8

Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

25.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

26.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

27.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

28.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

29.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

30.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the

account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

31.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

32.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about the user's access or use of that application may appear on the user's profile page.

33.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

34.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

35.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

10

36.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

11

37. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

39. Based on the foregoing, I request that the Court issue the proposed search warrant.

40. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

41. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

12

## REQUEST FOR SEALING

42.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_B.M. D'Arcy Jr._ _04|20|23 at 4:24 P.M._
Brian D'Arcy
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _4-20-2023_, 2023.

HON. JAMES R. SICKEL
United States Magistrate Judge
Eastern District of Wisconsin

13

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook accounts **https://www.facebook.com/MinaLeigh30** and **https://www.facebook.com/louis.sanapaw.7** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **December 16, 2022 to January 13, 2023**;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from **December 16, 2022 to January 13, 2023**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers;

future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from **December 16, 2022 to January 13, 2023,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from **December 16, 2022 to January 13, 2023;**

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

2

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government **within 14 days** of issuance of this warrant.

3

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841(a)(1) involving Louis Sanapaw, Aremina Dodge, and Daro James between **December 16, 2022 to January 13, 2023,** including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)    The sale of illegal drugs;

(b)    Communications between Louis Sanapaw, Aremina Dodge, and Daro James;

(c)    The overdose death of Aremina Dodge;

(d)    Actions taken to conceal the death of Aremina Dodge or the sale of illegal drugs to Aremina Dodge and Daro James;

(e)    Messages, photographs, videos, memes, status updates, comments, or other postings or communications

(f)    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g)    Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(h)    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in

4

addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.     such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____      _____
Date                                             Signature